## McGuire v. Arnett, et al.

(Decided May 23, 1911.)

### Appeal from Lawrence Circuit Court.

Conveyance—Action to Set Aside—Mental Capacity—Question of Fact—In an action to set aside a conveyance on the ground that the vendor did not have sufficient mental capacity to make the deed. Held that the question is one of fact and the judgment of the chancellor canceling the deed is affirmed.

GEORGE MARTIN, A. J. GARRED and B. G. KINNER for appellant.

R. T. BURNS, N. S. BURNS, F. L. STEWART, H. C. SULLIVAN, W. D. O'NEAL and A. O. CARTER for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

John McGuire was the owner of a tract of land containing about 200 acres, which he conveyed to his brother James. Sometime thereafter his brother-in-law, Elliott Arnett, acting as next friend for John, who had no guardian or committee, instituted a suit to have the conveyance set aside, on the ground that John did not have suffi-

cient mental capacity to make the deed, and that it was procured from him by undue influence and without consideration. He also sought to recover $1,400, the value of timber alleged to have been cut and removed from the land by James after the execution of the deed. The material allegations of the petition were traversed in the answer, and the case was prepared and submitted for judgment on the two-fold question, to-wit, the capacity of John to convey and the value of the timber removed. The Chancellor found in favor of the plaintiff on both propositions, and fixed the value of the timber cut and removed at $30.25. The defendant appeals.

The question involved is purely one of fact. John McGuire was past seventy years of age. His brother-in-law and two sisters testified that he had been of weak or feeble mind since infancy. His family physician, and other neighbors, who had known and been well acquainted with him for many years, say that he had always been of weak mind, and, in their judgment, incapable of transacting any business. Some years before the date of the transaction complained of, Mrs. McGuire, the mother of John and James, had deeded to James a valuable tract of land, containing about eighty acres, for the stated consideration that he would care for her during the remainder of her life and for John during his life. Under this arrangement, after the death of his mother John lived with James, and was so living with him at the time the deed in question was executed. During his entire life his sisters and acquaintances, and his brother James as well, testified that he had never transacted any business of any kind or character. After the death of his mother his brother James bought all of his clothing for him and looked after his wants, giving him such attention as he needed. In early life he was sent to school, but never learned to read otherwise than as a child, by spelling out each word, and he cannot write. The witnesses to his signature on the deed testified that they asked him why he was giving away his land, and he said because his brother had been good to him. He knew his neighbors, and the people generally living in that locality, and up until the latter years of his life worked in the crops grown on the place.

His brother James concedes that he is feeble minded, but insists that he had sufficient mental capacity to know what he was doing, and that the deed should be upheld; that his sisters cared nothing for him and paid no atten-

tion to him; that John liked him, and, since the death of his mother, had made his home with him and he should be permitted to give him his land if he wanted to. There would be more force in this argument on the part of James were it not for the fact that he has already been paid for rendering this service to John. His mother in her lifetime, evidently realizing that John was not capable of taking care of himself, virtually appointed James a trustee for him, and paid to him, in the conveyance of the eighty acres of land, a sum which he considered sufficient to justify him in caring for his brother as long as he lived. So that, in furnishing him a home and in caring for and looking after him, he is but carrying out an obligation which he assumed in accepting the eighty acres of land. This very fact was an acknowledgment on his part, and a recognition on the part of his mother, of that which his sisters now charge, to-wit, that John was not capable of taking care of himself. It is difficult to conceive how one who did not have sufficient mental capacity or judgment to contract for or buy his own clothing could be regarded as capable of executing a contract of that importance to him which the deed under consideration was. It deprived him of everything that he had in the world and left him absolutely dependent upon charity in the event of his brother's failure. There should be no question about his capacity to know and understand what he was doing in a transaction of this kind to justify the Chancellor in upholding it. After carefully considering the entire record we are satisfied that the Chancellor reached the right conclusion.

Judgment affirmed.